IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANA GRAY,<br>individually and on behalf of<br>all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CJS SOLUTIONS GROUP, LLC<br>d/b/a THE HCI GROUP,<br><br>Defendant. | :<br>:<br>:<br>:   Civil Action No.: 18-7336 (GHW)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S UNOPPOSED MOTION FOR
APPROVAL OF SETTLEMENT**

**I.     INTRODUCTION**

Named Plaintiff[1] Shana Gray ("Plaintiff"), individually and on behalf of all others similarly situated, and Defendant The CJS Solutions Group, LLC d/b/a/ The HCI Group ("Defendant" or "HCI") (together, the "Parties") have agreed to resolve the above-captioned lawsuit on a collective basis. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement, because it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations. Accordingly, Plaintiff seeks, and Defendant does not oppose, court approval of the Settlement Agreement and Release (the "Settlement Agreement") attached as Exhibit 1 to the Declaration of Ryan F. Stephan, filed in support of Plaintiff's Unopposed Motion for Approval of Settlement ("Stephan Decl.")[2]. For the Court's convenience, a Proposed Approval Order is attached to the Stephan Decl. as Exhibit 4.

---

[1] All capitalized terms are defined in the Settlement Agreement and Release. *See* Settlement Agreement, ¶ 12 *et seq.*

[2] Unless otherwise indicated, all exhibits are attached to the Stephan Declaration.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiff worked for Defendant as an Epic Activation Consultant ("EAC"), providing "At The Elbow" or "ATE" training and support services to Defendant's clients—namely medical and healthcare facilities—with the implementation and administration of newly integrated computer systems. Plaintiff filed her Collective Action Complaint on August 14, 2018, alleging that Defendant violated the FLSA by improperly classifying her and other EACs as independent contractors and failing to pay them proper overtime wages at time-and-one-half, instead paying them on a straight-rate basis, only, for all hours worked. (ECF No. 1). Specifically, Plaintiff brought these claims on behalf of herself and "[a]ll individuals who were classified as independent contractors by Defendant that currently work, or have worked, for Defendant as an ATE or any similarly-titled, hourly-paid position, during the applicable statute of limitations [] period and have not already released their claims." *Id*. at ¶ 25. Defendant denies it misclassified Plaintiff, or any member of the Settlement Collective, and denies that it violated any laws pertaining to the payment of wages, denies that collective action treatment would be appropriate in litigation and vigorously disputes the claims asserted in the Lawsuit.

On October 30, 2018, the Court granted the Parties' request for a 70-day stay of the proceedings pending private mediation. (ECF No. 19). Soon thereafter, and in light of the Parties' agreement to pursue private mediation, the Parties entered into a tolling agreement on November 1, 2018, which effectively tolled the FLSA statute of limitations on Plaintiff's and putative collective members' claims. *See* Stephan Decl. at ¶ 10. On December 13, 2018 and again on January 10, 2019, the Parties participated in full-day, in-person mediation sessions alongside experienced mediator, Stephen Sonnenberg, Esq. *Id*. at ¶ 13. Prior to attending mediation, the Parties engaged in the exchange of substantial data and information, that included Defendant's

production of electronic timekeeping and payroll data for Plaintiff and all putative collective members. *Id.* at ¶ 11. On January 10, 2019, the Parties were able to reach a settlement agreement in principle of this collective action lawsuit, the final terms of which are memorialized in the Settlement Agreement, fully executed on February 27, 2019. *Id.* at ¶ 13; *see also* Settlement Agreement.

**III.    SUMMARY OF THE SETTLEMENT TERMS**

The Settlement Agreement provides that the case will be certified as a collective action pursuant to 29 U.S.C. §216(b) for settlement purposes only and establishes a settlement fund of $500,000.00 ("Gross Settlement Amount") from which Plaintiff and Settlement Collective Members may claim a settlement award. *See* Settlement Agreement at ¶ 12(j). The Gross Settlement Amount means the maximum amount that Defendant will pay in connection with the settlement, including Court-approved Attorneys' Fees and Litigation Costs, Settlement Administration Costs, and a Service Award to Named Plaintiff. *Id.* All Settlement Collective Members shall receive a settlement award based on the following formula:

(i)   $25.00 will be allocated to each Settlement Collective Member, prior to the determination of *pro rata* individual settlement shares;

(ii)  The Net Settlement Amount will then be divided by the total number of hours over forty (40) worked by all Settlement Collective Members, to determine a dollar amount per overtime hour ("Overtime Hour Value");

(iii) Each Settlement Collective Member will receive a *pro rata* portion of the Net Settlement Amount that is then determined by multiplying his/her total overtime hours worked by the Overtime Hour Value.

*Id.* at ¶ 30.

The Settlement Collective Members eligible to receive a settlement award are the Named Plaintiff and all persons who worked as an Epic Activation Consultant during the time period of

August 14, 2015 until May of 2017, who have not previously released their claims against Defendant, and/or who did not participate in the settlement of an earlier filed litigation against Defendant, *Sanders v. The CJS Solutions Group d/b/a The HCI Group*, Case No. 17-cv-03809 (S.D.N.Y.) (ER).  *See* Settlement Agreement at ¶ 12(v).[3]  There are 541 Settlement Collective Members, including the Named Plaintiff.  *Id*.

Following Court approval, the Settlement Administrator will mail the Notice of Collective Action Settlement ("Settlement Notice") attached as Exhibit 2 to the Declaration of Ryan F. Stephan to all Settlement Collective Members, along with a Settlement Award check that will include, on the back, a Check Opt-In Form.  *Id*. at ¶¶ 14, 19.  Settlement Collective Members will have one hundred and twenty (120) calendar days to cash his or her Settlement Award check, from the date it is first issued.  *Id*. at ¶ 12(d).  Only those Settlement Collective Members who timely cash their Settlement Award check, and whose Check Opt-In Form is unaltered and deemed sufficient after reverse positive pay services by the Settlement Administrator, will be deemed "Participating Collective Members" and will be bound by the terms of the Settlement Agreement and Release.  *Id*. at ¶¶ 12(y), 14-15.

Subject to the approval of the Court, the Parties agreed to retain Atticus Administration to serve as the Settlement Administrator.  *See* Settlement Agreement at ¶ 12(t).  The Settlement Administration Costs are estimated to be ($11,375.00) and will be paid from the Gross Settlement Amount.  *Id*. at ¶ 28.  Pursuant to the Settlement Agreement and subject to the approval of the Court, Named Plaintiff requests, and Defendant does not oppose, a service award in the amount of ($10,000.00) in recognition of her assistance rendered in obtaining the settlement for the collective

---

[3] The Parties acknowledge that each Settlement Collective Member has already received two opportunities to participate in a settlement of their claims in connection with the settlement in *Sanders v. The CJS Solutions Group d/b/a The HCI Group*, Case No. 17-cv-03809 (S.D.N.Y.) (ER).

and the risks she undertook to do so. *Id*. at ¶ 27(a). Finally, pursuant to the Settlement Agreement and subject to the approval of the Court, Named Plaintiff requests, and Defendant does not oppose, an award of one-third (1/3) of the Gross Settlement Amount for attorneys' fees, or ($165,000.00), plus reimbursement of reasonable out-of-pocket costs in the amount of ($7,000.00), incurred in litigating this case and achieving a substantial settlement on behalf of Plaintiff and the Settlement Collective Members. *Id*. at ¶ 27(b).

## IV. ARGUMENT

### A. Applicable Legal Standard for Approval of FLSA Settlements

As an initial matter, absent approval by a district court or the Department of Labor ("DOL"), parties cannot settle claims under the FLSA by way of a private, stipulated dismissal with prejudice. *Mei Xing Yu v. Hasaki Restaurant, Inc.*, 319 F.R.D. 111 (S.D.N.Y. 2017) (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d. Cir. 2015)). The standard for approval of an action arising under the FLSA requires only a determination that the proposed settlement is "fair and reasonable." *Ahmed v. David Bouley, LLC*, 2017 WL 4863088, at *1 (S.D.N.Y. Oct. 12, 2017) (quoting *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). "If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*.

### B. The Settlement Agreement Is Fair and Reasonable, and Should Be Approved

In evaluating a proposed settlement of FLSA claims as being fair and reasonable, courts in this Circuit apply the five-factor test articulated in *Wolinsky*, which considers: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the Parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F.Supp.2d at 335 (quoting *Medley v. Am. Cancer Sbc*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

### 1. The Settlement Is A Significant Recovery for Plaintiff's and Collective Members' Claims (First Factor)

Plaintiff claims that Defendant misclassified her and other Epic Activation Consultants as independent contractors, and failed to pay them proper overtime compensation for hours worked over forty (40) in a workweek, instead paying them a straight hourly rate for all hours worked. *See* Settlement Agreement, ¶ 2. Plaintiff, on behalf of herself and putative collective members, sought compensation for unpaid overtime, liquidated damages, interest and attorneys' fees and costs. (ECF No. 1). The recovery here is excellent given the range of potential recovery and the assumptions used in calculating Plaintiff's and Collective Members' damages.

The gross amount to be paid by Defendant under the Settlement Agreement here, $500,000.00, represents almost 60% of the unliquidated damages identified by Plaintiff's Counsel as being owed to Plaintiff and Settlement Collective Members for unpaid half-time overtime wages. Stephan Decl. at ¶ 14. Determining whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 178 (S.D.N.Y. 2000)). Rather, "there is a range of

reasonableness … which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, the Gross Settlement Amount provides the Settlement Collective Members with a recovery for unpaid overtime compensation, and was negotiated after Plaintiff's Counsel's substantial investigation, review and analysis of electronic timekeeping and payroll data provided by Defendant prior to mediation. Stephan Decl. at ¶ 11. The Gross Settlement Amount is based on an analysis of actual overtime hours worked by the Settlement Collective Members, as determined by Defendant's records, and paid at a straight-time rate during the relevant time period. *Id.* at ¶ 14. Each Settlement Collective Members' individual settlement award is based on the actual overtime hours s/he worked, so that individuals who worked more overtime during the relevant time period will receive a larger award compared to those who worked fewer hours. Settlement Agreement at ¶ 30. Using the data provided, Plaintiff's Counsel were able to calculate the maximum, unliquidated half-time overtime compensation amounts owed to putative collective members during a three-year statutory time period as totaling approximately $862,600.00. Stephan Decl. at ¶ 12. *see also* 29 U.S.C. § 255(a) (providing for a two-year statute of limitations under the FLSA, except where it is proven that the employer's violations were willful, invoking a three-year statute of limitations).

The Settlement Award payments are being made available at an early stage of the litigation, taking into account the fact that a *bona fide* dispute exists as to whether Plaintiff and the Settlement Collective Members were properly classified as independent contractors, and whether any exemptions apply such that they would be unable to recover overtime compensation. Stephan Decl. at ¶ 18. Importantly, the Settlement Agreement provides for immediate payment to the Settlement

Collective Members, as Settlement Award checks will be mailed along with the Settlement Notice. Without the Settlement Agreement, the statute of limitations would continue to run on Plaintiff's and Settlement Collective Members' FLSA claims, diminishing the range of possible recovery each day. And, though it is expected that the majority of Collective Members will participate in the settlement, it is likely that less than 100% of Settlement Collective Members will cash a Settlement Award and Check Opt-In Form, and therefore will not be bound by the settlement and will not release any claims. *Id*. at ¶ 19. Moreover, and as set forth above, each Settlement Collective Member has already received two opportunities to participate in a settlement of their claims, in connection with the settlement in *Sanders v. The CJS Solutions Group d/b/a The HCI Group*, Case No. 17-cv-03809 (S.D.N.Y.) (ER).

In light of the uncertainties relative to the risks of continued litigation, particularly establishing liability and obtaining and maintaining collective action certification, as well as the Parties' desire to avoid future legal proceedings, the settlement here, reached through arm's-length negotiations between experienced counsel, represents a significant and immediate recovery for Plaintiff and Settlement Collective Members. *See e.g., Hernandez v. Loco 111 Inc.*, 2017 WL 6205809, at *2 (S.D.N.Y. Dec. 5, 2017) (approving settlement of 37% of anticipated maximum recovery); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation); *Gomez v. Bogopa Madison LLC*, 2017 WL 6594226, at *2 (S.D.N.Y. Dec. 21, 2017) (approving settlement as fair and reasonable holding that "[i]f a jury were to accept all the allegations in the Complaint as true, the proposed settlement would likely be a very small percentage of Plaintiff's potential

recovery at trial."). Accordingly, this factor supports approval of the Parties' Settlement Agreement as fair and reasonable.

### 2. The Settlement Avoids Extensive Litigation, Appeals and Potential Failure (Second and Third Factors)

Defendant is willing to enter this settlement and forego continued litigation over significant disputed issues of law and fact in order to avoid further costs of litigation. On the other hand, Plaintiff, on behalf of herself and the collective, is willing to resolve her claims for less than she might receive at trial, because it affords a guaranteed payment and will avoid the uncertainty of a conditional certification motion, a summary judgment motion, decertification, and/or trial. Stephan Decl. at ¶ 21. Though Plaintiff is confident she would prevail on conditional certification and the merits of her claims, Defendant was also prepared to vigorously defend this case, namely by asserting numerous defenses to liability and disputing that Plaintiff's claims were appropriate for FLSA conditional certification. *Id.* at ¶ 20. Defendant would have certainly argued that its classification of Plaintiff and the Collective Members as independent contractors was lawful, and that they were exempt from the overtime requirements of the FLSA, and in turn arguing that Defendant's compensation scheme was lawful. *Id.* Plaintiff believes that the settlement achieved is an excellent result for her and the collective members that provides immediate compensation without years of protracted litigation and delay, when taking into account the Parties' respective positions. *Id.* at ¶ 22.

### 3. The Settlement Agreement was Reached Through The Diligent Efforts of Experienced Counsel, Without Any Possibility of Fraud or Collusion (Fourth and Fifth Factors)

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation omitted). "The

assistance of an experienced mediator ... reinforces that the Settlement Agreement is non-collusive." *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2009 WL 6490085, at *1 (E.D.N.Y. Oct. 1, 2009).

There is plainly no collusion or fraud with respect to the Parties' Settlement Agreement, which is the result of extensive investigation into the facts and law at issue in this case, and was reached only after the Parties exchanged substantial settlement-related discovery, including electronic timekeeping and payroll data, and participated in two (2) full-day, in-person mediation sessions with an experienced mediator, Stephen Sonnenberg, Esq. Stephan Decl. at ¶ 13. The terms were reached during extensive arm's length negotiations, and only after Plaintiff's Counsel engaged in significant investigation and due diligence regarding the facts of the case and the merits of Plaintiff's and putative class members' claims, and their likelihood of success at trial, as well as Defendant's potential and likely defenses. *Id*. at ¶ 17. There can be no doubt that the Parties' were well-informed about the strengths and weaknesses of their respective positions, especially considering both Plaintiff's Counsels' and Defendant's Counsel's experience at handling similar claims involving "at-the-elbow" workers. *Id*. As such, these factors further demonstrate that the Parties' Settlement Agreement is fair and reasonable and warrants approval. Overall, and as demonstrated above, this settlement is a fair and reasonable compromise that should be approved.

### 4. The Notice of Settlement Sufficiently Notifies Collective Members of Their Rights Under the Settlement

The Court should also approve the proposed Notice of Settlement, which sufficiently informs Settlement Collective Members of the nature of the Litigation and terms of the Settlement Agreement, their individual Settlement Awards, the scope of the Released Claims, the payment of Attorneys' Fees and Litigation Costs, and how they may opt-in to or not opt-in to the settlement by cashing or not cashing the enclosed settlement check. *See Clark v. Ecolab Inc.,* No.

10

04CIV.4488PAC, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (approving class notice that, *inter alia*, described settlement terms and fee allocation).

### C. This Settlement Does Not Contain Overreaching Terms

*Cheeks* warns against potentially overreaching settlement terms like: (1) overbroad confidentiality and non-disparagement clauses; (2) overbroad, general releases; and (3) excessive and undocumented attorneys' fees. *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015); *Panganiban v. Medex Diagnostic & Treatment Ctr., LLC*, 2016 WL 927183, at *2 (E.D.N.Y. Mar. 7, 2016) (non-disparagement clause). This Agreement does not have these problems. First, the Settlement Agreement does not require confidentiality or non-disparagement. *Second*, the release is narrowly tailored to wage and hour claims related to the position held by Plaintiff during the relevant time period—Epic Activation Consultant. *See* Settlement Agreement ¶ 15. Moreover, because the release here is limited to all wage and hour claims that accrued to date, it passes muster. *See, e.g.*, *Vidal v. Eager Corp.*, No. 16 Civ. 979, 2018 WL 1320659, at *2-3 (E.D.N.Y. Mar. 13, 2018) (approving release of all wage and hour claims "predating the [s]ettlement"). Lastly, as outlined below, the fees in this case are appropriate and approval of this settlement is warranted.

### D. The Service Award to Named Plaintiff Is Justified and Should Be Approved

Pursuant to the Parties' Settlement Agreement and subject to the approval of the Court, Defendant has agreed to provide the Named Plaintiff, Shana Gray, with a Service Award payment in the amount of ($10,000.00) for her significant contributions to the prosecution and reasonable resolution of the lawsuit. *See* Settlement Agreement, ¶ 27(a). Courts routinely approve incentive awards to compensate named plaintiffs for "personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *In re Nissan*

11

*Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013) (quoting *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001)).  It is particularly appropriate to compensate named plaintiffs with service awards where they have actively assisted counsel in the prosecution of the litigation for the benefit of a class and/or collective.  *DeLeon v. Wells Fargo Bank, N.A.*, 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015) (service awards "are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation").

Here, the role of the Named Plaintiff was crucial.  She sacrificed her time to prosecute this action on behalf of her fellow current and former workers, and she routinely conferred and corresponded with Counsel on a very regular basis, staying abreast of current pleadings, settlement-related discovery, and participated in the mediation efforts that led to the resolution of her case.  Stephan Decl. at ¶ 37.  Moreover, Plaintiff took a significant risk in representing the interests of her fellow workers, including risking her reputation in their field of employment by prosecuting this case on behalf of the collective. *See e.g., Frank*, 228 F.R.D. at 187 (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation").

Finally, the Service Award payment of ($10,000.00), representing only 2% of the gross settlement fund, is consistent with those approved in similar wage and hour collective actions

within this Circuit. *See e.g., Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (in FLSA collective action, awarding service awards totaling 5% of the settlement fund);*; Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 384 (W.D.N.Y. 2016) (approving service awards of $15,000 to each plaintiff); *Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (granting service awards of $20,000, $15,000 and $7,500 to named plaintiffs); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving service awards of $20,000 and $10,000 for class representatives). For all of these reasons, the Service Award payment of ($10,000.00) to Named Plaintiff Shana Gray should be approved as fair and reasonable.

### E. **Attorneys' Fees and Reasonable Litigation Costs Should Be Approved**

As an initial matter, the FLSA allows for a plaintiff to recover his or her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Kahlil v. Original Old Homestead Rest., Inc.*, 657 F.Supp.2d 470, 473 (S.D.N.Y.2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be awarded reasonable attorneys' fees and costs..."). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Velasquez v. SAFI-G*, 137 F.Supp.3d 582, 585 (S.D.N.Y. 2015) (citing *Wolinsky*, 900 F.Supp.2d at 336). While Courts may approve an attorney's fee on the basis of either a lodestar calculation or a percentage of the common fund method, the trend in this Circuit is to use the percentage of the common fund method in common fund cases, such as this one. *McDaniel v. Cnt'y of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Beckman v. KeyBank, N.A.*, 293

13

F.R.D. 467, 477 (S.D.N.Y. 2013); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012). Generally, courts use the lodestar method as a "cross check" to the percentage method and do not scrutinize the fee records as rigorously. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Moreover, the percentage method is also closely aligned with market practices, because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (citation omitted).

          **1.**      **The Requested Fee is Reasonable Under the Percentage-of-Recovery Method**

Plaintiff's Counsels' request for a contingency fee of one-third of the Gross Settlement Amount, or $165,000.00, plus costs in the amount of $7,000.00. This allocation is consistent with other attorneys' fee awards commonly accepted within the Second District in FLSA settlements. *See e.g., Gaspar v. Pers. Touch Moving, Inc.*, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District."); *Santos v. Yellowstone Props.*, 2016 WL 2757427, at *4 (S.D.N.Y. May 10, 2016) (one-third of total settlement amount approved, finding it consistent with other FLSA cases); *see also Najera v. Royal*

*Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015); *Sewell*, 2012 WL 1320124 at *12 (awarding attorneys' fees of one-third of the settlement).

The Gross Settlement Amount, which provides Settlement Collective Members with immediate recovery of damages for their FLSA claims, was carefully negotiated based on Plaintiff's Counsel prior experience litigating similar cases involving "at-the-elbow" workers, as well as Plaintiff's Counsel's substantial investigation into the facts and law of this case, and the review and analysis of documents and data produced by Defendant in preparation for mediation. Stephan Decl. at ¶¶ 11-12. Plaintiff's Counsel are nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour actions, and are justified in seeking compensation in the form of one-third of any potential settlement, plus out-of-pocket expenses, for their efforts. *Id*. at ¶ 7; Declaration of Michael J. Palitz ("Palitz Decl") at ¶ 12. Before agreeing to take on this matter, Plaintiff's Counsel entered into a contingency agreement with Named Plaintiff, allowing Plaintiff's Counsel to request a reasonable percentage of the recovery as a contingency fee payment, plus out-of-pocket expenses. Stephan Decl. at ¶ 24; Palitz Decl. at ¶ 13. Thus, Plaintiff's Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly-contingent basis despite the significant risk. Stephan Decl. at ¶ 24; Palitz Decl. at ¶ 19.

Accordingly, the Attorneys' Fee Award in the amount of $165,000.00, or one-third of the gross settlement fund, is fair and reasonable in light of the services performed and the results achieved, and should be approved.[4]

---

[4] The Court should also consider if the attorneys' fees are reasonable based on the following *Goldberg* factors: (1) time and labor expended by counsel; (3) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberg, 209 F.3d at 50. Based on Plaintiff's Counsel's contemporaneous records documenting the time and labor spent on reaching this settlement, the risks

15

### 2. The Lodestar Cross-Check Confirms that the Requested Fee is Justified

The practice in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. April 16, 2012) ("Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id*.

Overall, Plaintiff's Counsel expended 238 total hours prosecuting this case, representing a total lodestar amount of $109,037.98. Plaintiff's Counsels' lodestar amount is based on the product of the reasonable hourly rates and reasonable hours billed by the attorneys who worked on this case: Partner, Ryan F. Stephan ($650/hour); Associate Attorney[5], Catherine T. Mitchell ($350/hour); Stephan Zouras legal staff ($175/hour); Gregg I. Shavitz ($700/hour); Michael J. Palitz ($550/hour); Rita Claude, Legal Assistant ($150/hour). The rates used in calculating Plaintiff's Counsels' lodestar are similar and/or consistent with rates used by courts in this District. *Galindo v. E. Cty. Louth Inc.*, No. 16 CIV. 9149 (KPF), 2017 WL 5195237, at *4 (S.D.N.Y. Nov. 9, 2017) ("Courts in this District have repeatedly found that experienced attorneys typically charge between $300 and $400 per hour for wage-and-hour cases") (internal quotations omitted); *See also Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (approving as reasonable attorney rate of $550). Plaintiff's Counsel, Shavitz Law Group, have submitted similar rates for approval to this court on numerous occasions. *See Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S.

---

involved in litigating this matter, the quality of Plaintiff's Counsel's representation, and the public policy considerations, Plaintiff's attorneys' fees are reasonable under the *Goldberg* Factors.

[5] Catherine T. Mitchell was recently promoted to Partner at the beginning of 2019. However, throughout the majority of the pendency of this action her rates were those of an Associate Attorney, as stated here.

Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014) (2014 case in which rates ranged up to $550 per hour for counsel); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (same); *Hernandez v. Merrill Lynch & Co.,* No. 11 Civ. 8472 (KBF)(DCF), 2013 U.S. Dist. LEXIS 42681, at *26-29 (S.D.N.Y. Mar. 21 2013).

Moreover, for purposes of the crosscheck, these rates have been submitted to and approved by other courts. For example, similar rates were approved for Stephan Zouras, LLP in *Bhattacharya et al. v. Capgemini North America, Inc., et al.*, Case No. 1:16-cv-07950 (N.D. Ill. November 13, 2018); *Reddick v. Symphony Diagnostic Services No. 1, Inc.*, Case No. 16-cv-9959 (N.D. Ill. July 11, 2017); *Ivy v. Adventist Midwest Health*, Case No. 1:16-cv-7606 (N.D. Ill. November 14, 2018).

Overall, Plaintiff's Counsel requests a fee that is only 1.5 times their lodestar amount. Stephan Decl. at ¶ 30. Their lodestar is a reasonable estimate of the fees accrued to date because Plaintiffs' Counsel compiled it from contemporaneous time records and used billing judgment to account for overstaffing and duplicative work. *Id*. at ¶ 33. As such, Plaintiff's request should be approved.

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court grant this Unopposed Motion for Approval of Settlement, and enter the accompanying proposed Approval Order.

Dated: March 8, 2019    Respectfully Submitted,

/s/ Ryan F. Stephan
Ryan F. Stephan
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606

(312) 233-1550
(312) 233-1560 *f*
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

Michael Palitz
Shavitz Law Group, P.A.
830 Third Avenue, 5th Floor
New York, New York 10022
(800) 616-4000
mpalitz@shavitzlaw.com

Gregg I. Shavitz
Shavitz Law Group, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
(561) 447-8888
gshavitz@shavitzlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE SETTLEMENT COLLECTIVE MEMBERS**

## CERTIFICATE OF SERVICE

    I, the attorney, hereby certify that on March 8, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

                                                               */s/ Ryan F. Stephan*